**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1876**

Mary Cocchiarella,
Appellant,

vs.

Donald Driggs,
Respondent.

**Filed September 8, 2015
Affirmed in part, reversed in part, and remanded
Johnson, Judge**

Hennepin County District Court
File No. 27-CV-HC-14-967

Gary Van Winkle, Andrew P. Schaffer, Galen Robinson, Mid-Minnesota Legal Aid, Minneapolis, Minnesota 55401 (for appellant)

Donald Driggs, Spring Park, Minnesota (pro se respondent)

Considered and decided by Johnson, Presiding Judge; Kirk, Judge; and Toussaint, Judge.*

**S Y L L A B U S**

A person may not pursue a claim to recover possession of residential rental property under section 504B.375 of the Minnesota Statutes if the person never has occupied the property.

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**O P I N I O N**

**JOHNSON**, Judge

Mary Cocchiarella claims that Donald Driggs agreed to rent an apartment to her but later prevented her from moving into the apartment and refused to return her payment of the security deposit and the first month's rent. Cocchiarella commenced this action to obtain possession of the apartment and to recover damages. The district court dismissed Cocchiarella's claim for possession of the apartment on the ground that she cannot satisfy the requirements of the statute on which her claim is based because she never occupied the apartment. We conclude that the district court did not err in its analysis of Cocchiarella's claim for possession of the apartment. But we also conclude that the district court erred by not resolving Cocchiarella's claim for damages and by making a finding concerning the status of funds that had been deposited with the district court administrator. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

**FACTS**

For purposes of this appeal, we assume that the following allegations in Cocchiarella's verified petition are true. In January 2014, she saw a "for rent" sign in front of a multi-unit apartment building in the city of Spring Park. She met Driggs at the apartment building, and he showed her three units that he said were available. They agreed that she would rent unit 3. On February 1, Cocchiarella returned to "fill out paperwork" and discuss moving in, but Driggs said that he needed to work on the unit and that she could move in a few days later. On February 3, Cocchiarella gave Driggs

2

$2,400 for a security deposit and the first month's rent, and he gave her a handwritten receipt. Driggs told Cocchiarella that she could move into the apartment the following day. But Driggs did not allow Cocchiarella to move in the following day or during the following week, despite Cocchiarella's numerous communications and numerous attempts to take possession.

On February 14, 2014, Cocchiarella filed a petition for unlawful exclusion in which she sought possession of the apartment pursuant to section 504B.375 of the Minnesota Statutes and an award of damages pursuant to section 504B.231 of the Minnesota Statutes. On the same day, an order was issued scheduling a hearing in the Hennepin County housing court, a program of the Hennepin County District Court. *See* Minn. Stat. § 484.013, subd. 1(a) (2014). The order stated that Cocchiarella should "be prepared to address the issue of whether she has standing to bring this action as a residential tenant as defined by Minnesota Statutes section 504B.001, subdivision 12."

At a hearing in housing court in April 2014, Driggs orally moved to dismiss Cocchiarella's petition on the ground that she cannot prove a claim under section 504B.375 because she is not a "residential tenant," as that term is defined by statute. *See* Minn. Stat. §§ 504B.001, subd. 12, 504B.375 (2014). In May 2014, the housing court referee recommended that Driggs's motion to dismiss be granted on the ground that Cocchiarella is not a "residential tenant." Cocchiarella requested review of the housing court referee's recommendation by a district court judge. *See* Minn. Stat. § 484.013, subd. 6; Minn. R. Gen. Pract. 611(a). The district court judge held two hearings on the matter, at which the parties presented oral arguments. In October 2014, the district court

3

judge adopted the housing court referee's recommendation and dismissed Cocchiarella's petition. Cocchiarella appeals.

## ISSUES

I.  Did the district court err by interpreting section 504B.375 of the Minnesota Statutes to require that, to be a "residential tenant," a petitioner must have occupied the property of which possession is sought?

II.  Did the district court err by not addressing and resolving Cocchiarella's claim for damages under section 504B.231 of the Minnesota Statutes?

III.  Did the district court err by finding that funds deposited with the district court administrator had been disbursed to Cocchiarella?

## ANALYSIS

### I.

Cocchiarella first argues that the district court erred by concluding that she may not pursue an action under section 504B.375 on the ground that she is not a "residential tenant" of the apartment of which she seeks possession.

Cocchiarella's first claim is based on a statute that applies to the "actual or constructive removal or exclusion of a residential tenant" and provides the residential tenant with a means to "recover possession of the premises." Minn. Stat. § 504B.375, subd. 1(a). The purpose of the statute "is to provide an additional and summary remedy for residential tenants unlawfully excluded or removed from rental property." *Id.*, subd. 5. A residential tenant may recover possession of rental property by "present[ing] a verified petition to the district court of the judicial district . . . in which the premises are

4

located." *Id.*, subd. 1(b). If the petition establishes that a residential tenant was wrongfully excluded or removed from rental property, "the court shall immediately order that the residential tenant have possession of the premises." *Id.*, subd. 1(c). A petition filed pursuant to section 504B.375 sometimes is called a "lockout petition." *Bass v. Equity Residential Holdings, LLC*, 849 N.W.2d 87, 89-90 (Minn. App. 2014).

The provisions of section 504B.375 are available only to a person who is a "residential tenant." Minn. Stat. § 504B.375, subd. 1(a). The term "residential tenant" is defined within chapter 504B to mean "a person who is occupying a dwelling in a residential building under a lease or contract, whether oral or written, that requires the payment of money or exchange of services." Minn. Stat. § 504B.001, subd. 12. The housing court referee reasoned that, to be a "residential tenant," a person must have actually occupied the subject rental property, and the housing court referee noted that Cocchiarella's petition conceded that she never occupied unit 3 of Driggs's building. The district court judge adopted the housing court referee's reasoning and concluded that Cocchiarella cannot maintain an action under section 504B.375 because she was not a residential tenant when she filed her petition.

The key issue for this appeal is whether Cocchiarella was a "residential tenant," as that term is used in chapter 504B, at the time she filed her petition seeking possession of the apartment pursuant to section 504B.375. Cocchiarella's argument implicates issues of statutory interpretation. "Our primary goal in statutory interpretation is to give effect to the intent of the Legislature." *Swanson v. Brewster*, 784 N.W.2d 264, 284 (Minn. 2010). "If the Legislature's intent is clear from the unambiguous language of the statute,

5

we apply the statute according to its plain meaning." *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716-17 (Minn. 2014). We interpret a statute as a whole so that each section does not conflict with surrounding sections. *American Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000). We apply a *de novo* standard of review to a district court's interpretation of a statute. *Goodman v. Best Buy, Inc.*, 777 N.W.2d 755, 758 (Minn. 2010).

To determine the plain meaning of a particular word used in a statute, it is appropriate to refer to the common usage of the word. *Gassler v. State*, 787 N.W.2d 575, 586 n.11 (Minn. 2010); *Swanson*, 784 N.W.2d at 274; *In re Phillips' Trust*, 252 Minn. 301, 306, 90 N.W.2d 522, 527 (1958). In this appeal, the key word in the definition is "occupying"; a "residential tenant" is "a person *who is occupying* a dwelling in a residential building." Minn. Stat. § 504B.001, subd. 12 (emphasis added). The common meaning of the word "occupy" in the context of residential real property is "to take or enter upon possession of; to seize," *Webster's New International Dictionary* 1684 (2d ed. 1934), "to take up residence in: settle in," *Webster's Third New International Dictionary* 1561 (3d ed. 1961), or "[t]o dwell or reside in," *The American Heritage Dictionary of the English Language* 1218 (5th ed. 2011). These definitions indicate that a person satisfies the definition of "residential tenant" in chapter 504B only if the person actually had taken possession of rental property and had begun residing there before the filing of a petition pursuant to section 504B.375. This interpretation is bolstered by the legislature's use of the word "recover" in section 504B.375, subdivision 1(a), which states, "A residential tenant to whom this section applies may *recover* possession of the premises as described

6

in paragraphs (b) to (e)." Minn. Stat. § 504B.375, subd. 1(a) (emphasis added). The common definition of the word "recover" is "to get renewed possession of; to win back; to regain, as in lost property, territory," *Webster's New International Dictionary* 2081 (2d ed. 1934), or "[t]o get back (something lost or taken away)," *The American Heritage Dictionary of the English Language* 1470 (5th ed. 2011). This language indicates that the remedy provided by section 504B.375 is available only to a person who had possession of rental property and seeks to recover possession.

Cocchiarella contends that she is within the statutory definition of "residential tenant" because she had a right to possess and occupy the apartment due to her alleged oral agreement with Driggs, even though she never occupied the apartment. She relies on caselaw that defines the relationship between landlords and tenants under the common law. But we are obligated to apply the statutory definition of the term "residential tenant," which is the term used in section 504B.375. *See State v. Schmid*, 859 N.W.2d 816, 820 (Minn. 2015) ("We do not turn to the common law definition of a word if the statute provides its own definition.").

Cocchiarella also contends that section 504B.375 should be interpreted broadly to achieve its purposes and that the district court's interpretation of the statute leads to an unreasonable result. To the contrary, it appears that the definition of "residential tenant" is consistent with the purpose of the statute. A person who has occupied residential rental property but has been unlawfully excluded or removed from the property likely needs a quick and simple means of regaining possession of the property. Without possession, the person likely is without access to personal property and may face risks to his or her

7

personal safety.  By contrast, a person who never has occupied residential rental property likely is not without access to personal property and is less likely to face risks to personal safety.  As the district court judge noted, Cocchiarella has other remedies against Driggs, even if she cannot obtain possession of the apartment under section 504B.375.  This is apparent from the provision of the statute that states, "The purpose of this section is to provide an *additional and summary remedy* for residential tenants unlawfully excluded or removed from rental property."  Minn. Stat. § 504B.375, subd. 5 (emphasis added).

Thus, the district court did not err by dismissing Cocchiarella's claim for possession pursuant to section 504B.375 on the ground that Cocchiarella was not a "residential tenant" when she commenced her action.[1]

**II.**

Cocchiarella next argues that the district court erred by dismissing her action without addressing and resolving her claim for damages under section 504B.231.

Cocchiarella's second claim is based on a statute that provides:  "If a landlord, an agent, or other person acting under the landlord's direction or control unlawfully and in

---

[1]Cocchiarella also argues that the district court erred by denying her motion to strike portions of a memorandum of law that Driggs submitted to the district court. Cocchiarella argued to the district court that Driggs had referred to facts that were not in the record created in the housing court.  *See* Minn. R. Gen. Pract. 611(a) ("A judge's review of a decision recommended by the referee shall be based upon the record established before the referee.").  The district court denied Cocchiarella's motion to strike in its October 2014 order, without analysis or explanation.  But in its ruling on the merits of Driggs's motion, the district court did not consider or rely on any facts that were not in the housing court record.  Furthermore, we are affirming the district court's ruling that Cocchiarella cannot prevail on her claim for possession under section 504B.375 because she was not a "residential tenant" when she commenced this action.  Thus, the district court's denial of Cocchiarella's motion to strike is not reversible error.

bad faith removes, excludes, or forcibly keeps out a tenant from residential premises, the tenant may recover from the landlord treble damages or $500, whichever is greater, and reasonable attorney's fees." Minn. Stat. § 504B.231(a) (2014). The Hennepin County housing court has jurisdiction over a claim for damages under section 504B.231. *Bass*, 849 N.W.2d at 91-92.

Cocchiarella expressly referred to section 504B.231 in her petition. She also alleged in her petition that she incurred out-of-pocket expenses of $1,380, in addition to the payment of $2,400 for the security deposit and the first month's rent. Yet the housing court referee did not mention her claim for damages under section 504B.231 in the May 2014 order recommending dismissal of the action. Likewise, the district court judge did not mention Cocchiarella's claim for damages under section 504B.231 in the October 2014 order adopting the housing court referee's recommendation. There is no suggestion that either the housing court referee or the district court judge dismissed the damages claim for the same reason that the possession claim was dismissed. A claim for damages may be pursued by a "tenant." *See* Minn. Stat. § 504B.231(a). Neither the housing court referee nor the district court judge stated that a claim for damages under section 504B.231 is viable only if a tenant has prevailed on a claim for possession under section 504B.375. Driggs has not made such an argument on appeal. Furthermore, the dismissal of the damages claim cannot be attributed to any failure by Cocchiarella to press the claim. In her notice requesting review by a district court judge, Cocchiarella specifically referred to her damages claim and stated that the housing court referee's "failure to address Plaintiff's 504B.231 . . . claim[] is clear error." At the hearing before the district

court judge, Cocchiarella's attorney twice asserted that the housing court referee had erred by not addressing the claim for damages.

Thus, the district court erred by dismissing Cocchiarella's action without addressing and resolving her claim for damages under section 504B.231. Therefore, we remand the case to the district court for further proceedings on that claim.

**III.**

Cocchiarella last argues that the district court erred in its final order by making the following finding: "All funds previously on deposit with the Court Administrator as security in this matter were previously disbursed pursuant to Referee Harris's Order."

Our review of this issue is based on the procedural history of this case. Soon after the action was commenced, Driggs deposited $2,400 with the district court administrator, which is the amount he had received from Cocchiarella. For reasons that are not well explained by the district court record, Cocchiarella later deposited an additional $2,400, which is the amount of rent for March and April. In May 2014, the housing court referee ordered that all funds being held by the district court administrator be released to Cocchiarella. But in her notice requesting review by a district court judge, Cocchiarella requested "a stay of that portion of the housing court's Order that allows release of the rents and security deposit funds placed with the Court" on the ground that "the security deposit and those rents should be retained by the Court until the issues of possession and damages are determined." The parties later stipulated that the funds previously deposited with the district court administrator shall be deemed to be sufficient security. The housing court referee approved the stipulation in June 2014.

10

It appears from the district court record that the district court did not specifically rule on or otherwise resolve Cocchiarella's request for a stay. It also appears that the housing court referee's order approving the stipulation may have resolved Cocchiarella's request for a stay. More importantly, nothing in the district court record indicates that the district court administrator disbursed the funds to Cocchiarella. Accordingly, there is no support in the record for the finding in the final order that the funds deposited with the district court administrator have been disbursed to Cocchiarella.

Thus, the district court erred by finding that the funds deposited with the district court administrator have been disbursed to Cocchiarella. On remand, the district court shall confirm that the funds have not been disbursed to Cocchiarella and thereafter correct or clarify the October 2014 order.

## DECISION

The district court did not err by dismissing Cocchiarella's claim for possession of the apartment under section 504B.375. The district court erred by not addressing and resolving Cocchiarella's claim for damages under section 504B.231 and by finding that funds deposited with the district court administrator have been disbursed to Cocchiarella. Therefore, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**